EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan H. Soto Solá<br><br>    Peticionario<br><br>        v.<br><br>Registradora de la Propiedad de San Juan, Sección Segunda Hon. Carmen E. Ávila Vargas<br><br>    Recurrida | Recurso Gubernativo<br><br><br>2013 TSPR 115<br><br>189 DPR ____ |

Número del Caso: RG-2013-2


Fecha: 9 de octubre de 2013


Registradora de la Propiedad, Sección II San Juan


Abogado de la Parte Peticionaria:

        Lcdo. Juan H. Soto Solá


Abogada de la Parte Recurrida:

        Lcda. Carmen E. Ávila Vargas


Materia: Recurso Gubernativo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan H. Soto Solá

    Peticionario

        v.                        RG-2013-2        Recurso
                                                                Gubernativo
Registradora de la Propiedad
de San Juan, Sección Segunda
Hon. Carmen E. Ávila Vargas

    Recurrida

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 9 de octubre de 2013.

En esta ocasión debemos resolver si un pagaré hipotecario con fecha específica, puede ser modificado por acuerdo de las partes para extender su fecha de vencimiento luego de este haber vencido, pero que aún está vigente.

El 13 de febrero de 2013, el Lcdo. Juan H. Soto Solá (peticionario) compareció ante este Tribunal mediante un recurso gubernativo. Nos solicitó la revisión de la denegatoria de recalificación que el 6 de febrero de 2013 emitió la Registradora de la Propiedad, Hon. Carmen E. Ávila Vargas (Registradora), en el Registro de la Propiedad, Sección Segunda de San Juan (Registro).

Además, solicitó que se ordenara la inscripción de la *Escritura de Modificación de Pagaré e Hipoteca*. A continuación un resumen de los hechos que dieron lugar a este recurso.

## I

El Dr. César Berríos López era dueño de la oficina núm. 706 en el Edificio Midtown en San Juan. En el 2008, el doctor Berríos López decidió vender la oficina y el licenciado Soto Solá ofreció comprar la misma por $186,755. Así, el 12 de noviembre de 2008 las partes otorgaron la Escritura Núm. 35 sobre *Compraventa con Precio Aplazado con Garantía Hipotecaria*. Allí compareció por la parte vendedora el doctor Berríos López por sí y en representación de sus dos hijas mayores de edad, Tanya Berríos Shearig y Claudia Berríos Shearig, las cuales residen en los Estados Unidos y, por la parte compradora el peticionario. La venta se llevó a cabo por $186,755 y quedó un precio aplazado de $180,088.95 el cual el peticionario se comprometió a pagar antes del 12 de noviembre de 2009. Esta obligación quedó evidenciada con un pagaré garantizado con hipoteca.

Así las cosas, el 8 de enero de 2009 la escritura fue presentada en el Registro.[1] La misma quedó inscrita por

---

[1] Junto con la Escritura Núm. 35 se presentaron como documentos complementarios la Escritura de Capitulaciones Matrimoniales del peticionario y las Actas de Protocolización de Poder Núm. 32 y 33 de las hijas del doctor Berríos López.

virtud de la Ley Núm. 216-2010, conocida como Ley para Agilizar el Registro de la Propiedad.[2]

Ahora bien, el peticionario no pudo conseguir el financiamiento para poder pagar la cantidad acordada antes del 12 de noviembre de 2009. Ante esta situación, el 15 de junio de 2010 el peticionario y el doctor Berríos López acordaron modificar el pagaré garantizado con hipoteca para extender su vencimiento hasta el 1 de junio de 2015. Para formalizar dicho acuerdo, las partes otorgaron la Escritura Núm. 72 sobre *Modificación de Pagaré e Hipoteca.* La escritura se presentó en el Registro el 2 de abril de 2012.

El 6 de septiembre de 2012, la Registradora expidió una notificación de faltas en la cual solicitó las Actas de Protocolización Núm. 32 y 33 mencionadas en la escritura con las correspondientes certificaciones del Registro de Poderes. Así las cosas, el 12 de septiembre de 2012 el peticionario presentó un Escrito de Recalificación en el cual informó que las actas se encontraban anejadas a la Escritura Núm. 35, presentada el 8 de enero de 2008. Además, el 24 de octubre de 2012, el peticionario presentó las certificaciones actualizadas del Registro de Poderes.

---

[2] La Ley Núm. 216-2010 (30 L.P.R.A. sec. 1821 *et seq.*), proveyó una medida transitoria para actualizar y agilizar los esfuerzos de calificación e inscripción de documentos, dado el enorme atraso existente en el Registro de la Propiedad. Así, la ley estableció que "[t]odos los documentos presentados en el Registro de la Propiedad al 30 de abril de 2010 quedan inscritos", excepto por las excepciones establecidas en el Art. 2 de dicha ley. Exposición de Motivos de la Ley Núm. 216-2010. De igual forma estableció que aquellos documentos inscritos en virtud de esta ley, se presumirán correctos. Art. 9 de la Ley Núm. 216-2010.

Posteriormente, el 2 de noviembre de 2012 la Registradora expidió una segunda notificación en la cual señaló que "la hipoteca cuya modificación se solicita venció el 12 de noviembre de 2009, y la modificación se solicita con posterioridad a su vencimiento".[3] Inconforme con esa determinación, el 21 de noviembre de 2012, el peticionario presentó un Escrito de Recalificación en el cual solicitó la recalificación e inscripción de la Escritura Núm. 72. No obstante, el 6 de febrero de 2013, la Registradora nuevamente emitió una notificación de denegatoria de inscripción por los mismos fundamentos que expuso en la denegatoria de noviembre de 2012. Aún en desacuerdo con la determinación de la Registradora, el peticionario presentó ante este Tribunal el recurso gubernativo de referencia.

En síntesis, el peticionario alegó que la Registradora erró al denegar la inscripción de la Escritura Núm. 72 en el Registro porque "[l]a expiración del término provisto en la obligación no implica su extinción".[4] Con particularidad, el peticionario expresó que a pesar de haber expirado el término de un año provisto en la escritura, la obligación original subsiste y, por lo tanto, también subsiste la hipoteca que la garantiza. Además, señaló que el vencimiento del término del contrato solo le concede al doctor Berríos López la oportunidad de hacer la obligación exigible. Ahora, alegó que al doctor no hacerla

---

[3] Apéndice del Recurso Gubernativo, pág. 27.

[4] Recurso Gubernativo, pág. 5.

exigible y la obligación continuar vigente entre ellos, los créditos accesorios también continúan en vigor. Así, el peticionario arguyó que el doctor Berríos López le otorgó una prórroga tácita y este continuó realizando los pagos hasta que decidieron modificar el pagaré y la hipoteca para extender su vencimiento hasta junio 2015, permaneciendo los demás términos y condiciones vigentes. Según lo anterior, el peticionario adujo que la voluntad de las partes no fue extinguir la obligación original, sino modificarla. Por lo tanto, entiende que no se produjo una novación extintiva con la nueva escritura, sino una novación modificativa.

Por su parte, la Registradora expresó en su alegato que en el presente caso las partes realizaron un pagaré garantizado con hipoteca con fecha fija o específica del 12 de noviembre de 2009. La Registradora invocó lo resuelto en R & G Premier Bank P.R. v. Registradora de la Propiedad, 162 D.P.R. 602 (2004), en el cual esta Curia resolvió si procedía la cancelación en el Registro, por confusión de derechos, de un pagaré hipotecario no vencido. Adujo que en ese caso este Tribunal modificó el dictamen emitido en Srio. de Hacienda v. Tribunal Superior, 95 D.P.R. 444 (1967), "a los únicos fines de incluir en dicho razonamiento aquellos pagarés que no se han vencido (Énfasis suplido) y que se encuentren en manos de su librador y este no los ha puesto nuevamente en circulación".[5] Así las cosas, alegó que cuando un pagaré es

---

[5] Alegato de la Registradora, págs. 6-7, citando a R & G Premier Bank P.R. v. Registradora de la Propiedad, 162 D.P.R. 602, 612 (2004).

pagadero en fecha específica se considera vencido cuando llega la fecha establecida. La Registradora arguyó que al vencer el pagaré hipotecario, este perdió su vigencia y efectividad y solo le restaría al acreedor la ejecución o cancelación de la hipoteca. Añadió que al vencer el pagaré todas sus garantías también quedaron sin efecto.

De acuerdo con lo anterior, la Registradora expresó que cuando las partes otorgaron la escritura de modificación hacía siete meses que la hipoteca había vencido. Además, la escritura se presentó en el Registro dos años y cinco meses después de haber vencido la hipoteca. Así las cosas, concluyó que "estando vencido el pagaré hipotecario con fecha cierta, librado por el recurrente, perdió su negociabilidad, vigencia y efectividad y su garantía ya no permanece latente. Solo le resta al tenedor (acreedor) la ejecución o la cancelación, pero no su modificación".[6] Claro está, el efecto último de la acción de la Registradora es que obligaría a las partes a pagar aranceles al cancelar el pagaré hipotecario inscrito de $180,088.95 y, además, pagar aranceles al inscribir el nuevo pagaré hipotecario con la cantidad aún adeudada.

## II

## A

El Registro de la Propiedad es el organismo del gobierno que guarda constancia de los actos relacionados al

---

[6] Alegato de la Registradora, pág. 7.

trámite jurídico de los bienes inmuebles y los derechos inscribibles sobre estos.[7] Este se creó con el propósito de registrar los actos y contratos relativos a los bienes inmuebles mediante un sistema de publicidad de títulos.[8]

Por otra parte, la hipoteca se define como

> "un derecho real que… sujeta o vincula lo hipotecado, cualquiera que sea su titular, al poder de exigir eventualmente la realización de su valor así como la adopción de medidas dirigidas a salvaguardarlo, todo en seguridad o garantía de la efectividad de alguna obligación dineraria, y cuyo derecho es de carácter accesorio, indivisible, de constitución registral, y grava bienes inmuebles, ajenos y enajenables, que permanecen en posesión de su propietario o titular, y el cual implica un poderoso instrumento del crédito territorial".[9]

Así, la hipoteca es un derecho real de carácter accesorio. Esto significa que, por su condición de derecho de garantía, es requisito esencial que se constituya para asegurar el cumplimiento de una obligación principal.[10] Debido a su naturaleza accesoria, su <u>vigencia</u> no es independiente de la <u>vigencia</u> de la obligación principal.[11] Así, pues, la hipoteca está subordinada a la obligación principal en su existencia y extinción.[12] Su dependencia a

---

[7] Exposición de Motivos de la Ley Núm. 216-2010, *supra*.

[8] <u>Bechara Fagundo v. Registradora</u>, 183 D.P.R. 610, 617 (2011).

[9] L.R. Rivera Rivera, <u>Derecho Registral Inmobiliario Puertorriqueño</u>, 3ra ed., San Juan, Editores Jurídica, 2012, pág. 485 (citando a Roca Sastre, <u>Derecho Hipotecario</u>, T. VII, págs. 113-114.).

[10] Art. 1756 del Código Civil de P.R. (31 L.P.R.A. sec. 5001).

[11] <u>Westernbank v. Registradora</u>, 174 D.P.R. 779, 784-785 (2008).

[12] Íd.; <u>Liechty v. Descartes Saurí</u>, 109 D.P.R. 496 (1980). Véase, además, L. Muñoz Morales, <u>Lecciones de Derecho Hipotecario</u>, Río Piedras, Ed. U.P.R., 1946, T. II, pág. 15.

la obligación principal es de tal grado que si la primera es nula o inexistente, la hipoteca también será nula o inexistente.[13]   Por lo tanto, la hipoteca se extingue en todo caso que se extinga la obligación garantizada por esta.[14]

**B**

Aclarado lo anterior, es importante analizar la Ley Núm. 208-1995, mejor conocida como la Ley de Instrumentos Negociables.[15]   Esta ley fue promulgada con el fin de modernizar nuestra legislación sobre los instrumentos negociables y proveer celeridad en el tráfico comercial.[16] Así, la Sec. 2-104(a) define instrumento negociable como "una promesa o una orden incondicional de pagar una cantidad específica de dinero con o sin intereses u otros cargos descritos en la promesa u orden, si el mismo: (1) es pagadero al portador o a la orden en el momento en que se emitió o cuando entra en posesión de un tenedor por vez primera; (2) si es pagadero a la presentación o en una fecha específica; y (3) no especifica ningún otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero…".[17]

---

[13] Rivera Rivera, op. cit., pág. 488.

[14] Westernbank v. Registradora, supra, pág. 785; Rivera Rivera, op. cit., pág. 488.

[15] 19 L.P.R.A. sec. 501 et seq.

[16] Exposición de Motivos de la Ley Núm. 208-1995 (1995 (Parte 1) Leyes de Puerto Rico 1012-1014).  Véase, además, Westernbank v. Registradora, supra, pág. 786.

[17] 19 L.P.R.A. sec. 504 (a).

Por otro lado, la Sec. 2-104(e) establece que un instrumento se considerará un pagaré si es una promesa. Quiere decir, que existe un pagaré cuando hay un compromiso escrito de pagar el dinero suscrito por la persona que se obliga a pagar.[18]

Ahora bien, la Ley Núm. 208-1995, *supra*, provee distintos tipos de pagarés, dependiendo del momento cuando resultan exigibles. En lo pertinente al caso de referencia, la Sec. 2-108 define los pagarés vencederos a la presentación y los pagarés pagaderos en fecha específica.[19] Así, pues, esta sección establece que un pagaré es pagadero a la presentación cuando en el propio documento indica que es pagadero a la presentación, a la vista, cuando el tenedor lo desee o cuando no se especifica ninguna fecha de pago.[20] Quiere decir que los pagarés que no contienen una fecha cierta de vencimiento son pagaderos a la presentación.[21]

Por otro lado y en lo relacionado al caso de autos, la Sec. 2-108 también define los pagarés vencederos en fecha específica. Esta sección dispone que un pagaré es vencedero en fecha específica cuando es pagadero luego de transcurrido un periodo específico de tiempo, en una fecha fija o en un momento de tiempo fácilmente determinable en

---

[18] Sec. 2-103 (a) (9) de la Ley Núm. 208-1995 (19 L.P.R.A. sec. 503 (a) (9)).

[19] 19 L.P.R.A. sec. 508.

[20] Íd.

[21] Westernbank v. Registradora, supra, pág. 786.

el momento que se emitió la promesa.[22]   Además, la Sec. 2-113 establece que la fecha que se indique en el pagaré "determinará su vencimiento si el instrumento es pagadero dentro de un plazo fijo después de su fecha".[23]   En otras palabras, la fecha fija o determinable que contengan los pagarés, distinta y posterior a la fecha de emisión, será la fecha de vencimiento de dicho pagaré.

Ahora bien, cuando un pagaré tenga una fecha específica y, además, exprese que es pagadero a la presentación, el instrumento será pagadero a la presentación hasta la fecha especificada en el pagaré.[24] Esto significa que si no se requiere el pago antes de la fecha establecida, se convertirá en pagadero en dicha fecha.[25]

De otra parte, la Sec. 2-407 de la Ley Núm. 208-1995 establece que una alteración es un cambio no autorizado realizado a un pagaré para modificarlo.[26]   Llevar a cabo una alteración tiene como consecuencia el relevar de responsabilidad a la parte cuya obligación es afectada por la alteración.[27]   No obstante, esta sección aclara que una parte no quedará relevada por una alteración si consintió a

---

[22] 19 L.P.R.A. sec. 508(b).

[23] 19 L.P.R.A. sec. 513.

[24] Sec. 2-108(c) de la Ley Núm. 208-1995 (19 L.P.R.A. sec. 508(c)).

[25] Íd.

[26] 19 L.P.R.A. sec. 657.

[27] Íd.

la misma.[28] **Por lo tanto, una modificación realizada a un pagaré con el consentimiento de todas las partes es válida y el pagaré no será anulado.**[29]

Finalmente, en cuanto al término prescriptivo para exigir el cumplimiento del pago de los pagarés vencederos en fecha específica, la propia Ley Núm. 208-1995 en su Sec. 2-118(a) dispone que

> [e]xcepto según se dispone en la subsección (e), **una acción para exigir el cumplimiento de la obligación contraída por una parte de pagar un pagaré pagadero en una fecha específica deberá ser comenzada dentro de los tres (3) años siguientes a la fecha o fechas de vencimiento** estipuladas en el pagaré o, si la fecha de pago es acelerada, dentro de tres (3) años siguientes a la fecha de vencimiento acelerada. (Énfasis nuestro).[30]

Por lo tanto, una vez transcurre la fecha indicada en el pagaré y este vence, el acreedor tiene tres años para poder exigir el cumplimiento del pago.

Ahora bien, cuando se trata de un pagaré hipotecario la Ley Núm. 208-1995, *supra*, contiene una disposición específica sobre su término prescriptivo, el cual es distinto a los demás pagarés. Así, la Sec. 2-118(h) dispone que

> [n]o obstante, cualquier disposición contraria aquí contenida, una acción para exigir el cumplimiento de una obligación, y cualquier interés devengado por dicha obligación, de una parte de pagar **un pagaré garantizado por hipoteca sobre bienes inmuebles deberá ser**

---

[28] Íd.; M.R. Garay Aubán, <u>Derecho Cambiario</u>, Ponce, Ed. Revista de Derecho Puertorriqueño, 1999, pág. 300.

[29] L.M. Negrón Portillo, <u>Derecho Cambiario de Puerto Rico (Instrumentos Negociables)</u>, 1995, pág. 114.

[30] 19 L.P.R.A. sec. 518(a).

> **iniciada dentro del término provisto por el
> Artículo 1864 del Código Civil de Puerto Rico**
> para el ejercicio de la acción hipotecaria.
> (Énfasis nuestro).

Como podemos observar, la mencionada sección nos refiere al Art. 1864 de nuestro Código Civil.[31] Este artículo expresa que "la acción hipotecaria prescribe a los veinte (20) años". De esta forma, la propia Ley de Instrumentos Negociables dispone que el término prescriptivo de un pagaré hipotecario será el mismo término prescriptivo de la acción hipotecaria. **Por lo tanto, el término prescriptivo de un pagaré hipotecario es veinte años.**

Expresado lo anterior, debemos determinar cuándo comienza a transcurrir dicho término prescriptivo. Como regla general, los términos prescriptivos comienzan a transcurrir desde la fecha de vencimiento del pagaré.[32] Además, el Art. 180 de la Ley Hipotecaria establece que "la acción hipotecaria prescribirá a los veinte (20) años, contados desde que pueda ser ejercitada con arreglo al título inscrito". Ello significa que la acción hipotecaria podrá ejercitarse al "momento del vencimiento del crédito según se consignó en el título".[33] Así y en lo pertinente al caso de referencia, cuando exista un pagaré hipotecario

---

[31] 31 L.P.R.A. sec. 5294.

[32] Sec. 2-118 de la Ley Núm. 208-1995, *supra*; Art. 145 de la Ley Hipotecaria (30 L.P.R.A. sec. 2469). Véase, además, Westernbank v. Registradora, 172 D.P.R. 71, 90 (2007), opinión de conformidad de la Juez Asociada Señora Rodríguez Rodríguez.

[33] Westernbank v. Registradora, 174 D.P.R. 779, 788 (2008), citando a L.R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 2da ed. rev., Río Piedras, Jurídica Editores, 2002, pág. 489.

con fecha cierta, el término prescriptivo comenzará en esa misma fecha.[34]

Por otro lado y ya conociendo el término prescriptivo de los pagarés hipotecarios, es importante aclarar la diferencia entre el vencimiento del pagaré hipotecario y su vigencia. El vencimiento es la "terminación del plazo establecido legal o convencionalmente para el cumplimiento de una obligación".[35] O sea, que un pagaré hipotecario con fecha específica vence cuando transcurre esa fecha establecida en el pagaré.[36] Quiere decir que una vez vence el pagaré hipotecario, la obligación se hace exigible y el acreedor puede pedir la ejecución de la hipoteca para satisfacer su crédito.[37]

Además de ser exigible, la Ley Núm. 208-1995 nos indica en la Sec. 2-304(b)(2) que cuando un instrumento con fecha específica vence, el instrumento entrará en mora el día después de la fecha de vencimiento.[38] Esto tiene como efecto que si ese pagaré vencido se negocia, el nuevo tenedor no podrá considerarse tenedor de buena fe, ya que se presume que una persona debe sospechar de un documento que aunque está vencido se desea negociar.[39] Esta Curia

---

[34] Westernbank v. Registradora, supra, págs. 89-90.

[35] Íd., pág. 83, citando a M. Osorio, Diccionario de ciencias jurídicas, políticas y sociales, Buenos Aires. Ed. Heliasta, 1992, pág. 1004.

[36] Sec. 2-113 de la Ley Núm. 208-1995, supra.

[37] First Federal Savs. V. Registrador, 113 D.P.R. 857, 861 (1983).

[38] 19 L.P.R.A. sec. 604(b)(2).

[39] Sec. 2-302(2) de la Ley Núm. 208-1995 (19 L.P.R.A. sec. 602(2)); B. Santiago Romero, Tratado de Instrumentos Negociables: Ley Uniforme de Instrumentos Negociables de Puerto Rico y Ley del Código Uniforme de

tuvo la oportunidad de explicar lo antes mencionado en Cintrón v. Domínguez, 60 D.P.R. 477 (1942):

> Pero cuando un instrumento negociable se encuentra en circulación después de su vencimiento, debe inspirar recelo por ese mero hecho. La pregunta surge inmediatamente--¿por qué está en circulación, por qué no ha sido pagado? Aquí hay alguna irregularidad. Por lo tanto, aunque no informa al endosatario de la existencia de alguna materia específica de defensa, como por ejemplo compensación, pago, o adquisición fraudulenta, sin embargo, lo pone en guardia; y él adquiere solamente título igual al que tenía el endosante, sujeto a cualquier defensa que se hubiere levantado, si la acción se hubiera incoado por el endosante.[40]

Por otro lado, la vigencia de un pagaré es el "[p]eriodo durante el cual las leyes, costumbres o contratos están en vigor y desarrollan todos los efectos jurídicos que le son característicos".[41] Esto significa que mientras una obligación tenga efectos jurídicos estará vigente y una vez pierda dicho efecto perderá también su vigencia.[42] Así, pues, mientras un acreedor tenga disponible la acción de ejecutar la hipoteca en un pagaré hipotecario, esta está vigente.

**Por lo tanto, cuando transcurre la fecha establecida en un pagaré hipotecario con fecha específica se entenderá que dicho pagaré venció. Ahora bien, tanto ese pagaré como la hipoteca aún permanecen vigentes ya que el acreedor**

---

Comercio de los Estados Unidos, 2da ed. rev., Ed. Universitaria, 1981, pág. 168.

[40] Cintrón v. Domínguez, 60 D.P.R. 477, 484 (1942).

[41] Westernbank v. Registradora, supra, pág. 84, citando a Diccionario de Contabilidad y Finanzas, Madrid, Ed. Cultural, 2003, pág. 273.

[42] Íd.

**puede instar una acción para que se cumpla con el pago y puede ejecutar la hipoteca. Una vez transcurre el término prescriptivo, el acreedor pierde todo derecho a ejecutar la hipoteca y entonces se entenderá que esta perdió su vigencia.** Así, pues, y dado que la vigencia de la hipoteca depende de la vigencia de la obligación principal, una vez transcurre el término prescriptivo del pagaré hipotecario la hipoteca se extinguirá por prescripción.[43] Es por esta razón que una vez prescribe la acción hipotecaria es que procede la cancelación del asiento en el Registro, ya que dicha acción perdió su vigencia y, por lo tanto, se extinguió.

### III

En el presente caso la Registradora denegó la inscripción de la modificación de un pagaré e hipoteca, ya que se solicitó luego de la fecha de vencimiento del pagaré. Por su parte, el peticionario alegó que la Registradora erró al denegar la inscripción porque la obligación principal entre las partes aún estaba vigente y, por lo tanto, la hipoteca también permanecía vigente. Añadió que el término establecido en el pagaré solo tenía el efecto de concederle al acreedor la oportunidad de hacer la obligación exigible.

Como expusiéramos, el doctor Berríos López y el peticionario otorgaron una escritura de compraventa con precio aplazado, la cual evidenciaron con un pagaré hipotecario con fecha específica. De acuerdo con la Ley

---

[43] Westernbank v. Registradora, supra, pág. 785.

Núm. 208-1995, esa fecha específica establecida en el pagaré determina la fecha de su vencimiento. Por lo tanto, el pagaré otorgado por las partes tenía como fecha de vencimiento el 12 de noviembre de 2009.

Así las cosas, debido a que las hipotecas son accesorias a las obligaciones principales, la hipoteca que se otorgó en el caso de referencia tiene la misma fecha de vencimiento que el pagaré. Quiere decir, luego del 12 de noviembre de 2009 tanto el pagaré como la hipoteca se encontraban vencidos. Sin embargo, una vez transcurrió el 12 de noviembre de 2009 comenzó a correr el término prescriptivo de veinte años para que el doctor Berríos López hiciera exigible la obligación y, por lo tanto, tanto el pagaré como la hipoteca aún permanecen vigentes. Ahora bien, tenemos que analizar si por acuerdo de las partes se puede modificar un pagaré hipotecario luego de su vencimiento, pero que aún está vigente. Veamos.

Como bien expresamos, existe una diferencia entre la fecha de vencimiento de un pagaré y su vigencia. Así, cuando un pagaré hipotecario vence, se convierte en exigible y el tenedor puede ir contra el deudor para cobrar la deuda. No obstante, dicho pagaré hipotecario aún permanece vigente. Así las cosas, el tenedor del pagaré puede negociarlo y ponerlo en circulación. Uno de los efectos que podría tener el negociar un pagaré vencido es que el nuevo tenedor no se consideraría tenedor de buena fe, pero si puede negociar. **Por lo tanto, un pagaré vencido aún es negociable. Al ser negociable y estar**

**vigente, puede ser modificado siempre y cuando sea con el consentimiento de todas las partes.** Claro está, las modificaciones que se realicen tendrán efecto contra terceras personas luego de su inscripción en el Registro.[44]

Al así resolver, lo hacemos conforme a nuestra reiterada expresión de que la Ley Hipotecaria y del Registro de la Propiedad se deben interpretar en forma que facilite y proteja el tráfico comercial, teniendo en mente como principio que al Registro se acude a buscar protección y no perjuicio.[45] Además, resolvemos según el propósito de la Ley Núm. 208-1995, la cual se creó para proveer celeridad al tráfico comercial.[46] No existe impedimento legal por el cual no se deba permitir que un pagaré hipotecario vigente sea modificado por acuerdo de todas las partes. Impedir tal modificación entorpecería el tráfico comercial, ya que dilataría el proceso y lo haría más oneroso para las partes. **Además, podría tener como consecuencia que el tenedor del pagaré no aceptará ninguna modificación, aunque esté de acuerdo con ella, y optará por exigir el cumplimiento de la deuda. Ello, porque tendrían que pagar aranceles para la cancelación del pagaré inscrito y por la inscripción del nuevo pagaré.**

---

[44] Art. 187 de la Ley Hipotecaria (30 L.P.R.A. sec. 2606).

[45] R & G Premier Bank P.R. v. Registrador, 162 D.P.R. 602, 612 (2004); Royal Bank of Canada v. Registrador, 105 D.P.R. 414 (1976); Srio. de Hacienda v. Tribunal Superior, 95 D.P.R. 444 (1967); Arroyo v. Registrador, 86 D.P.R. 362, 374 (1962); Roca v. Banco Territorial y Agrícola, 6 D.P.R. 164, 169 (1904).

[46] Exposición de Motivos de la Ley Núm. 208-1995, *supra*.

En el presente caso, luego del pagaré hipotecario vencer todas las partes se pusieron de acuerdo y decidieron modificarlo para extender su fecha de vencimiento. La Registradora denegó la modificación al alegar que ese pagaré ya no estaba vigente ni era negociable. Como vimos, no le asiste la razón. Debido a que aún no ha transcurrido el término prescriptivo, el pagaré se encuentra vigente y es negociable. Así, el doctor Berríos López pudiera ponerlo en circulación y entregárselo a un nuevo tenedor.

De otra parte, la Registradora alegó que como en R & G Premier Bank P.R. v. Registradora de la Propiedad, supra, le dimos énfasis a pagarés no vencidos, eso significa que una vez vence el pagaré ya no es negociable. Tampoco le asiste la razón. En ese caso mencionamos los pagarés no vencidos que se encuentran en manos del librador, no porque al vencer ya no se podían negociar, sino por las circunstancias particulares de ese caso. Nos referíamos a circunstancias en las que el pagaré se encuentra en manos del librador y este no los ha puesto en circulación y, por lo tanto, existe confusión de derechos. Así, lo que expresamos fue que en esos casos en los cuales existe confusión de derechos el librador puede renegociar el pagaré no vencido. Esto no quiere decir que solamente un pagaré no vencido puede ser negociable. **Como mencionáramos, los pagarés vencidos, pero que aún están vigentes, son negociables.**

Por lo tanto, al estar el pagaré hipotecario vigente y ser negociable no existe impedimento por el cual las partes

no puedan modificarlo. Al extender la fecha de vencimiento, el doctor Berríos López consintió a que no podrá exigir el pago de la deuda hasta la nueva fecha de vencimiento pactada. Así las cosas, el término prescriptivo que había comenzado cesa y una vez transcurra la nueva fecha de vencimiento dicho término prescriptivo comenzará nuevamente.

**Por lo anterior, concluimos que un pagaré vencido, pero aún vigente, puede ser modificado por acuerdo de todas las partes.** Así las cosas, la Registradora erró al denegar la solicitud de inscripción de la escritura de modificación del pagaré y la hipoteca en este caso.

### IV

Por los fundamentos antes expuestos, se revoca la calificación emitida por la Registradora de la Propiedad, Hon. Carmen E. Ávila Vargas, y se ordena la inscripción de la escritura de modificación de pagaré e hipoteca objeto del presente litigio.

Se dictará Sentencia de conformidad.


Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan H. Soto Solá

   Peticionario

       v.                      RG-2013-2       Recurso
                                             Gubernativo

Registradora de la Propiedad
de San Juan, Sección Segunda
Hon. Carmen E. Ávila Vargas

   Recurrida

SENTENCIA

San Juan, Puerto Rico, a 9 de octubre de 2013.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la calificación emitida por la Registradora de la Propiedad, Hon. Carmen E. Ávila Vargas, y se ordena la inscripción de la escritura de modificación de pagaré e hipoteca objeto del presente litigio.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez concurren con el resultado sin opinión escrita.

                        Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo