El Juez Asociado Señor Kolthoff Caraballo
emitió la opinión del Tribunal.
En esta ocasión debemos resolver si un pagaré hipote-cario con una fecha específica puede ser modificado por acuerdo de las partes para extender su fecha de venci-miento luego de vencido, pero cuando aún el pagaré está vigente.
El 13 de febrero de 2013, el Ledo. Juan H. Soto Solá (peticionario) compareció ante este Tribunal mediante un recurso gubernativo. Nos solicitó la revisión de la denega-toria de recalificación que emitió la Registradora de la Pro-piedad, Hon. Carmen E. Ávila Vargas (Registradora), en el Registro de la Propiedad, Sección Segunda de San Juan (Registro), el 6 de febrero de 2013. Además, solicitó que se ordenara la inscripción de la Escritura de Modificación de Pagaré e Hipoteca. Resumamos los hechos que dieron lu-gar a este recurso.
*658 I
El Dr. César Berríos López era dueño de la oficina núm. 706 en el Edificio Midtown en San Juan. En el 2008, el doctor Berríos López decidió vender la oficina y el licen-ciado Soto Solá ofreció comprarla por $186,755. Así, el 12 de noviembre de 2008 las partes otorgaron la Escritura Núm. 35 sobre Compraventa con Precio Aplazado con Ga-rantía Hipotecaria. Allí compareció el doctor Berríos López como parte vendedora, por sí y en representación de sus dos hijas mayores de edad, Tanya Berríos Shearig y Claudia Berríos Shearig —las cuales residen en Estados Uni-dos— y el peticionario como parte compradora. La venta se llevó a cabo por $186,755 y quedó un precio aplazado de $180,088.95, el cual el peticionario se comprometió a pagar antes del 12 de noviembre de 2009. Esta obligación quedó evidenciada con un pagaré garantizado con hipoteca.
Así las cosas, el 8 de enero de 2009 la escritura fue pre-sentada en el Registro.(1) Esta quedó inscrita en virtud de la Ley Núm. 216-2010, conocida como Ley para Agilizar el Registro de la Propiedad.(2)
Ahora bien, el peticionario no pudo conseguir el finan-ciamiento para poder pagar la cantidad acordada antes del 12 de noviembre de 2009. Ante esta situación, el 15 de junio de 2010 el peticionario y el doctor Berrios López acor-daron modificar el pagaré garantizado con hipoteca para extender su vencimiento hasta el 1 de junio de 2015. Para *659 formalizar este acuerdo, las partes otorgaron la Escritura Núm. 72 sobre Modificación de Pagaré e Hipoteca. La es-critura se presentó en el Registro el 2 de abril de 2012.
El 6 de septiembre de 2012, la Registradora expidió una notificación de faltas en la cual solicitó las Actas de Proto-colización Núm. 32 y Núm. 33 mencionadas en la escritura con las correspondientes certificaciones del Registro de Poderes. El 12 de septiembre de 2012 el peticionario pre-sentó un Escrito de Recalificación en el cual informó que las actas se encontraban anejadas a la Escritura Núm. 35, presentada el 8 de enero de 2008. Además, el 24 de octubre de 2012, el peticionario presentó las certificaciones actua-lizadas del Registro de Poderes.
Posteriormente, el 2 de noviembre de 2012, la Registra-dora expidió una segunda notificación en la cual señaló que “[l]a hipoteca cuya modificación [se] solicita venció el 12 de noviembre de 2009, y la modificación se solicita con poste-rioridad a su vencimiento”. (Enfasis suprimido).(3) Incon-forme con esa determinación, el 21 de noviembre de 2012, el peticionario presentó un Escrito de Recalificación en el cual solicitó la recalificación e inscripción de la Escritura Núm. 72. No obstante, el 6 de febrero de 2013, la Registra-dora nuevamente emitió una notificación de denegatoria de inscripción por los mismos fundamentos que expuso en la denegatoria de noviembre de 2012. Aún en desacuerdo con la determinación de la Registradora, el peticionario presentó ante este Tribunal el recurso gubernativo de referencia.
En síntesis, el peticionario alegó que la Registradora erró al denegar la inscripción de la Escritura Núm. 72 en el Registro porque “[l]a expiración del término provisto en la obligación no implica su extinción”.(4) Con particularidad, *660 el peticionario expresó que a pesar de haber expirado el término de un año provisto en la escritura, la obligación original subsiste y, por lo tanto, también subsiste la hipo-teca que la garantiza. Además, señaló que el vencimiento del término del contrato solo le concede al doctor Berríos López la oportunidad de hacer la obligación exigible. Ahora, alegó que al doctor no hacerla exigible y la obliga-ción continuar vigente entre ellos, los créditos accesorios también continúan en vigor. Así, el peticionario argüyó que el doctor Berríos López le otorgó una prórroga tácita y este continuó realizando los pagos hasta que decidieron modifi-car el pagaré y la hipoteca para extender su vencimiento hasta junio 2015, permaneciendo los demás términos y las condiciones vigentes. Según lo anterior, el peticionario adujo que la voluntad de las partes no fue extinguir la obligación original, sino modificarla. Por lo tanto, entiende que no se produjo una novación extintiva con la nueva es-critura, sino una novación modificativa.
Por su parte, la Registradora expresó en su alegato que en el presente caso las partes realizaron un pagaré garantizado con hipoteca con fecha fija o específica del 12 de noviembre de 2009. La Registradora invocó lo resuelto en R & G v. Registradora, 162 DPR 602 (2004), en el cual esta Curia resolvió si procedía la cancelación en el Registro, por confusión de derechos, de un pagaré hipotecario no vencido. Adujo que en ese caso este Tribunal modificó el dictamen emitido en Srio. de Hacienda v. Tribunal Superior, 95 DPR 436, 444 (1967), “a los únicos fines de incluir en dicho razonamiento aquellos pagarés que no se han vencido [...] y que se encuentran en manos de su librador y este no los ha puesto nuevamente en circulación”. (Enfasis suprimido).(5) Así las cosas, alegó que cuando un pagaré es pagadero en fecha específica se considera vencido cuando llega la fecha establecida. La Registradora argüyó que, al *661 vencer el pagaré hipotecario, este perdió su vigencia y efec-tividad y solo le restaría al acreedor la ejecución o cance-lación de la hipoteca. Añadió que al vencer el pagaré todas sus garantías también quedaron sin efecto.
De acuerdo con lo anterior, la Registradora expresó que cuando las partes otorgaron la escritura de modificación, la hipoteca había vencido hacía siete meses. Además, la escri-tura se presentó en el Registro dos años y cinco meses des-pués de haber vencido la hipoteca. Así las cosas, concluyó que “estando vencido el pagaré hipotecario con fecha cierta, librado por el recurrente, perdió su negociabilidad, vigencia y efectividad y su garantía ya no permanece latente. Solo le resta al tenedor (acreedor) la ejecución de hipoteca o la cancelación, pero no su modificación”.(6) Claro está, el efecto último de la acción de la Registradora es que obligaría a las partes a pagar aranceles al cancelar el pa-garé hipotecario inscrito de $180,088.95 y, además, pagar aranceles al inscribir el nuevo pagaré hipotecario con la cantidad aún adeudada.
II
A. El Registro de la Propiedad es el organismo del gobierno que guarda constancia de los actos relacionados con el trámite jurídico de los bienes inmuebles y los derechos inscribibles sobre estos.(7) Este se creó con el propósito de registrar los actos y contratos relativos a los bienes inmuebles mediante un sistema de publicidad de títulos.(8)
Por otra parte, la hipoteca se define como
[...] un derecho real que [...] sujeta o vincula lo hipotecado, cualquiera que sea su titular, al poder de exigir eventual- *662 mente la realización de su valor así como la adopción de me-didas dirigidas a salvaguardarlo, todo en seguridad o garantía de la efectividad de alguna obligación dineraria, y cuyo dere-cho es de carácter accesorio, indivisible, de constitución regis-tral, y grava bienes inmuebles, ajenos y enajenables, que per-manecen en posesión de su propietario o titular, y el cual implica un poderoso instrumento del crédito territorial.(9)
Así, la hipoteca es un derecho real de carácter accesorio. Esto significa que, por su condición de derecho de garantía, es un requisito esencial que se constituya para asegurar el cumplimiento de una obligación principal.(10) Debido a su naturaleza accesoria, su vigencia no es independiente de la vigencia de la obligación principal.(11) Así, pues, la hipoteca está subordinada a la obligación principal en su existencia y extinción.(12) Su dependencia a la obligación principal es de tal grado que si la primera es nula o inexistente, la hipoteca también será nula o inexistente.(13) Por lo tanto, la hipoteca se extingue en todo caso que se extinga la obligación garantizada por esta.(14)
B. Aclarado lo anterior, es importante analizar la Ley Núm. 208-1995, mejor conocida como la Ley de Instrumentos Negociables.(15) Esta ley fue promulgada para modernizar nuestra legislación sobre los instrumentos negociables y acelerar el tráfico comercial.(16) Así, la Sec. 2-104(a) define instrumento negociable como
*663 [...] una promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros car-gos descritos en la promesa u orden, si el mismo:
(1) Es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor;
(2) es pagadero a la presentación o en una fecha específica, y
(3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero [...](17)
Por otro lado, la See. 2-104(e) establece que un instrumento se considerará un pagaré si es una promesa. Esto quiere decir que existe un pagaré cuando hay un compromiso escrito de pagar el dinero suscrito por la persona que se obliga a pagar.(18)
Ahora bien, la Ley Núm. 208-1995, supra, provee distintos tipos de pagarés, dependiendo del momento cuando resultan exigibles. En lo pertinente al caso de referencia, la Sec. 2-108 define los pagarés vencederos a la presentación y los pagarés pagaderos en fecha específica.(19) Así pues, esta sección establece que una pagaré es pagadero a la presentación cuando en el propio documento indica que es pagadero a la presentación, a la vista, cuando el tenedor lo desee o cuando no se especifica ninguna fecha de pago.(20) Esto significa que los pagarés que no contienen una fecha cierta de vencimiento son pagaderos a la presentación.(21)
Por otro lado, y en lo relacionado con el caso de autos, la Sec. 2-108 de la Ley Núm. 208-1995, supra, también define los pagarés vencederos en fecha específica. Esta sección dispone que un pagaré es vencedero en fecha específica cuando es pagadero luego de transcurrido un pe- *664 riodo específico de tiempo, en una fecha fija o en un mo-mento de tiempo fácilmente determinable en el momento cuando se emitió la promesa.(22) Además, la Sec. 2-113 de esta ley establece que la fecha que se indique en el pagaré “determinará su vencimiento si el instrumento es pagadero dentro de un plazo fijo después de su fecha”.(23) En otras palabras, la fecha fija o determinable que contengan los pagarés, distinta y posterior a la fecha de emisión, será la fecha de vencimiento de dicho pagaré.
Ahora bien, cuando un pagaré tenga una fecha específica y, además, exprese que es pagadero a la presentación, el instrumento será pagadero a la presentación hasta la fecha especificada en el pagaré.(24) Esto significa que si no se requiere el pago antes de la fecha establecida, se convertirá en pagadero en dicha fecha.(25)
Por otra parte, la Sec. 2-407 de la Ley Núm. 208-1995 establece que una alteración es un cambio no autorizado realizado a un pagaré para modificarlo.(26) Llevar a cabo una alteración tiene como consecuencia el relevar de responsabilidad a la parte cuya obligación es afectada por la alteración.(27) No obstante, esta sección aclara que una parte no quedará relevada por una alteración si consintió a ella.(28) Por lo tanto, una modificación realizada a un pagaré con el consentimiento de todas las partes es válida y el pagaré no será anulado.(29)
Finalmente, en cuanto al término prescriptivo *665 para exigir el cumplimiento del pago de los pagarés vence-deros en fecha específica, la Sec. 2-118(a) de la propia Ley Núm. 208-1995 dispone que,
[s]alvo se dispone en el inciso (e) de esta sección, una acción para exigir el cumplimiento de la obligación contraída por una parte de pagar un pagaré que es pagadero en una fecha espe-cífica deberá comenzarse dentro de los tres (3) años siguientes a la fecha o fechas de vencimiento estipuladas en el pagaré o, si la fecha de pago se acelera, dentro de tres (3) años siguien-tes a la fecha de vencimiento acelerado. (Enfasis nuestro).(30)
Por lo tanto, una vez transcurre la fecha indicada en el pagaré y este vence, el acreedor tiene tres años para poder exigir el cumplimiento del pago.
Ahora bien, cuando se trata de un pagaré hipotecario, la Ley Núm. 208-1995, supra, contiene una disposición específica sobre su término prescriptivo, distinto a los demás pagarés. Así, la Sec. 2-118(h) dispone:
Independiente de cualquier disposición en contrario aquí con-tenida, una acción para exigir el cumplimiento de una obliga-ción, de una parte de pagar un pagaré garantizado por una hipoteca sobre bienes inmuebles, y todo interés devengado por tal obligación, deberá iniciarse dentro del término provisto por [el Art. 1864 del Código Civil de Puerto Rico] para el ejercicio de la acción hipotecaria. (Enfasis nuestro)(31)
Como podemos observar, la mencionada sección nos re-fiere al Art. 1864 de nuestro Código Civil.(32) Este artículo expresa que “[l]a acción hipotecaria prescribe a los veinte (20) años [...]”. De esta forma, la propia Ley de Instrumentos Negociables dispone que el término prescriptivo de un pagaré hipotecario será el mismo término prescriptivo de la acción hipotecaria. Por lo tanto, el término prescriptivo de un pagaré hipotecario es veinte años.
*666 Expresado lo anterior, debemos determinar cuándo comienza a transcurrir dicho término prescriptivo. Como regla general, los términos prescriptivos comienzan a transcurrir desde la fecha de vencimiento del pagaré.(33) Además, el Art. 180 de la Ley Hipotecaria y del Registro de la Propiedad establece que "[l] a acción hipotecaria prescribe a los veinte (20) años, contados desde que pueda ser ejercitada con arreglo al título inscrito”.(34) Ello significa que la acción hipotecaria podrá ejercitarse “al ‘momento del vencimiento del crédito según se consignó en el título’ ”.(35) Así y en lo pertinente al caso de referencia, cuando exista un pagaré hipotecario con fecha cierta, el término prescriptivo comenzará en esa misma fecha.(36)
Por otro lado y ya conociendo el término prescriptivo de los pagarés hipotecarios, es importante aclarar la diferencia entre el vencimiento del pagaré hipotecario y su vigencia. El vencimiento es “la ‘[germinación del plazo establecido legal o convencionalmente para el cumplimiento de una obligación’ ”.(37) O sea, que un pagaré hipotecario con fecha específica vence cuando transcurre esa fecha establecida en el pagaré.(38) Una vez vence el pagaré hipotecario, la obligación se hace exigible y el acreedor puede pedir la ejecución de la hipoteca para satisfacer su crédito.(39)
Además de ser exigible, la Sec. 2-304(b)(2) de la Ley Núm. 208-1995 nos indica que cuando un instrumento con *667 fecha específica vence, el instrumento entrará en mora al día después de la fecha de vencimiento.(40) Esto tiene como efecto que si ese pagaré vencido se negocia, no podrá con-siderarse al nuevo tenedor como tenedor de buena fe, ya que se presume que una persona debe sospechar de un documento que se desea negociar aunque está vencido.(41) Esta Curia tuvo la oportunidad de explicar esto en Cintrón v. Domínguez, 60 DPR 477, 484 (1942):
“Pero cuando un instrumento negociable se encuentra en circulación después de su vencimiento, debe inspirar recelo por ese mero hecho. La pregunta surge inmediatamente — ¿por qué está en circulación, por qué no ha sido pagado? Aquí hay alguna irregularidad. Por lo tanto, aunque no informa al en-dosatario de la existencia de alguna materia específica de de-fensa, como por ejemplo compensación, pago, o adquisición fraudulenta, sin embargo, lo pone en guardia; y él adquiere solamente título igual al que tenía el endosante, sujeto a cual-quier defensa que se hubiere levantado, si la acción se hubiera incoado por el endosante”. (Énfasis suprimido).
Por otro lado, la vigencia de un pagaré es el “ ‘[p]eriodo durante el cual las leyes, costumbres o contratos están en vigor y desarrollan todos los efectos jurídicos que le son característicos’”.(42) Esto significa que mientras una obligación tenga efectos jurídicos estará vigente y que una vez pierda dicho efecto perderá también su vigencia.(43) Así pues, mientras un acreedor tenga disponible la acción de ejecutar la hipoteca en un pagaré hipotecario, esta está vigente.
Por lo tanto, cuando transcurre la fecha establecida en un pagaré hipotecario con fecha específica, se enten- *668 derá que dicho pagaré venció. Ahora bien, tanto ese pagaré como la hipoteca aún permanecen vigentes, ya que el acreedor puede instar una acción para que se cumpla con el pago y puede ejecutar la hipoteca. Una vez transcurre el término prescriptivo, el acreedor pierde todo derecho a ejecutar la hipoteca y entonces se entenderá que esta perdió su vigencia. Así, pues, y dado que la vigencia de la hipoteca depende de la vigencia de la obligación principal, una vez transcurre el término prescriptivo del pagaré hipotecario la hipoteca se extinguirá por prescripción.(44) Es por esta razón que una vez prescribe la acción hipotecaria es que procede la cancelación del asiento en el Registro, ya que dicha acción perdió su vigencia y, por lo tanto, se extinguió.
III
En el presente caso la Registradora denegó la inscrip-ción de la modificación de un pagaré e hipoteca, ya que se solicitó luego de la fecha de vencimiento del pagaré. Por su parte, el peticionario alegó que la Registradora erró al de-negar la inscripción porque la obligación principal entre las partes aún estaba vigente y, por lo tanto, la hipoteca también permanecía vigente. Añadió que el término esta-blecido en el pagaré solo tenía el efecto de concederle al acreedor la oportunidad de hacer la obligación exigible.
Como expusiéramos, el doctor Berríos López y el peticio-nario otorgaron una escritura de compraventa con precio aplazado, la cual evidenciaron con un pagaré hipotecario con fecha específica. De acuerdo con la Ley Núm. 208-1995, esa fecha específica establecida en el pagaré determina la fecha de su vencimiento. Por lo tanto, el pagaré otorgado por las partes tenía como fecha de vencimiento el 12 de noviembre de 2009.
Así las cosas, debido a que las hipotecas son accesorias a las obligaciones principales, la hipoteca que se otorgó en *669 este caso tiene la misma fecha de vencimiento que el pa-garé, esto es, que luego del 12 de noviembre de 2009 ven-cían tanto el pagaré como la hipoteca. Sin embargo, luego del 12 de noviembre de 2009 comenzó a transcurrir el tér-mino prescriptivo de veinte años para que el doctor Berríos López exigiera el cumplimiento de la obligación; por lo tanto, tanto el pagaré como la hipoteca aún permanecen vigentes. Ahora bien, tenemos que analizar si por acuerdo de las partes se puede modificar un pagaré hipotecario luego de su vencimiento, aunque aún esté vigente. Veamos.
Como bien expresamos, existe una diferencia entre la fecha de vencimiento de un pagaré y su vigencia. Así, cuando un pagaré hipotecario vence, se convierte en exigible y el tenedor puede ir contra el deudor para cobrar la deuda. No obstante, dicho pagaré hipotecario aún permanece vigente. Así las cosas, el tenedor del pagaré puede negociarlo y ponerlo en circulación. Uno de los efectos que podría tener el negociar un pagaré vencido es que el nuevo tenedor no se consideraría tenedor de buena fe, pero sí puede negociar. Por lo tanto, un pagaré vencido aún es negociable. Al ser negociable y estar vigente, puede ser modificado siempre y cuando sea con el consentimiento de todas las partes. Claro está, las modificaciones que se realicen tendrán efecto contra terceras personas luego de su inscripción en el Registro.(45)
Al así resolver, lo hacemos conforme a nuestra reiterada expresión de que la Ley Hipotecaria y del Registro de la Propiedad se debe interpretar en forma que facilite y pro-teja el tráfico comercial, teniendo en mente como principio que al Registro se acude a buscar protección y no perjuicio.(46) Además, resolvemos según el propósito de la *670 Ley Núm. 208-1995, la cual se creó para proveer celeridad al tráfico comercial.(47) No existe impedimento legal por el cual no se deba permitir que un pagaré hipotecario vigente sea modificado por acuerdo de todas las partes. Impedir tal modificación entorpecería el tráfico comercial, ya que dila-taría el proceso y lo haría más oneroso para las partes. Además, podría tener como consecuencia que el tenedor del pagaré no aceptará ninguna modificación, aunque esté de acuerdo con ella, y optará por exigir el cumplimiento de la deuda. Ello, porque tendrían que pagar aranceles para la cancelación del pagaré inscrito y por la inscripción del nuevo pagaré.
En este caso, luego que venció el pagaré hipotecario, todas las partes acordaron modificarlo para extender su fecha de vencimiento. La Registradora denegó la modifica-ción al alegar que ese pagaré ya no estaba vigente ni era negociable. Como vimos, no le asiste la razón. Debido a que aún no ha transcurrido el término prescriptivo, el pagaré se encuentra vigente y es negociable. Así, el doctor Berríos López puede ponerlo en circulación y entregarlo a un nuevo tenedor.
Por otra parte, la Registradora alegó que como en R & G v. Registradora, supra, enfatizamos en cuanto a los paga-rés no vencidos, eso significa que una vez vence el pagaré ya no es negociable. Tampoco le asiste la razón. En ese caso mencionamos los pagarés no vencidos que se encuentran en manos del librador, no porque al vencer ya no se podían negociar, sino por las circunstancias particulares de ese caso. Nos referíamos a circunstancias en las que el pagaré se encuentra en manos del librador y este no los ha puesto en circulación y, por lo tanto, existe confusión de derechos. Así, lo que expresamos fue que en esos casos en los cuales existe confusión de derechos, el librador puede renegociar el pagaré no vencido. Esto no quiere decir que solamente *671 un pagaré no vencido puede ser negociable. Como mencionáramos, los pagarés vencidos, que aún están vigentes, son negociables.
Por lo tanto, al estar el pagaré hipotecario vigente y ser negociable, no existe impedimento alguno por el cual las partes no puedan modificarlo. Al extender la fecha de ven-cimiento, el doctor Berrios López consintió a que no podrá exigir el pago de la deuda hasta la nueva fecha de venci-miento pactada. Así las cosas, el término prescriptivo que había comenzado cesa y, una vez transcurra la nueva fecha de vencimiento, dicho término prescriptivo comenzará nuevamente.
Por lo anterior, concluimos que un pagaré vencido, pero aún vigente, puede ser modificado por acuerdo de todas las partes. Así las cosas, la Registradora erró al denegar la solicitud de inscripción de la escritura de modificación del pagaré y la hipoteca en este caso.
IV
Por los fundamentos antes expuestos, se revoca la cali-ficación emitida por la Registradora de la Propiedad, Hon. Carmen E. Ávila Vargas, y se ordena la inscripción de la escritura de modificación de pagaré e hipoteca objeto del presente litigio.

Se dictará Sentencia de conformidad.

La Jueza Asociada Señora Fiol Matta y la Juez Asociada Señora Rodríguez Rodríguez concurrieron con el resultado sin opinión escrita.

 Junto con la Escritura Núm. 35 se presentaron como documentos comple-mentarios la Escritura de Capitulaciones Matrimoniales del peticionario y las Actas de Protocolización de Poder Núm. 32 y 33 de las hijas del doctor Berrios López.

 La Ley Núm. 216-2010 (30 LPRA sec. 1821 et seq.) proveyó una medida transitoria para actualizar y agilizar los esfuerzos de calificación e inscripción de documentos, dado el enorme atraso existente en el Registro de la Propiedad. Así, la ley estableció que “[tjodos los documentos presentados en el Registro de la Propiedad al 30 de abril de 2010 quedan inscritos”, excepto por las excepciones establecidas en el Art. 2 de dicha ley (30 LPRA see. 1821). Exposición de Motivos de la Ley Núm. 216-2010, supra. Estableció igualmente que aquellos documentos inscritos en virtud de esta ley se presumirán correctos. Art. 9 de la Ley Núm. 216-2010 (30 LPRA see. 1828).

 Apéndice del Recurso Gubernativo, pág. 27.

 Recurso Gubernativo, pág. 5.

 Alegato de la Registradora recurrida, págs. 6-7, citando a R & G v. Registradora, 162 DPR 602, 612 (2004).

 Alegato de la Registradora recurrida, pág. 7.

 Exposición de Motivos de la Ley Núm. 216-2010.

 Bechara Fagundo v. Registradora, 183 DPR 610, 617 (2011).

 L.R. Rivera Rivera, Derecho registral inmobiliario puertorriqueño, 3ra ed., San Juan, Jurídica Editores, 2012, pág. 485, citando a Roca Sastre, Derecho hipotecario, T. VII, págs. 113-114.

 Art. 1756 del Código Civil de Puerto Rico, 31 LPRA sec. 5001.

 Westernbank v. Registradora [I], 174 DPR 779, 784-785 (2008).

 Íd.; Liechty v. Descartes Saurí, 109 DPR 496 (1980). Véase, además, L. Muñoz Morales, Lecciones de derecho hipotecario, Río Piedras, Junta Editora de la Universidad de Puerto Rico, 1946, T. II, pág. 15.

 Rivera Rivera, op. cit., pág. 488.

 Westernbank v. Registradora [I], supra, pág. 785; Rivera Rivera, op. cit., pág. 488.

 19 LPRA sec. 501 et seq.

 Exposición de Motivos de la Ley Núm. 208-1995 (1995 (Parte 1) Leyes de Puerto Rico 1012-1014). Véase, además, Westernbank v. Registradora [I], supra, pág. 786.

 19 LPRA sec. 504(a).

 Sec. 2-103(a)(9) de la Ley Núm. 208-1995 (19 LPRA sec. 503(a)(9)).

 19 LPRA sec. 508.

 Íd.

 Westernbank v. Registradora [I], supra, pág. 786.

 19 LPRA sec. 508(b).

 19 LPRA sec. 513(a).

 Sec. 2-108(c) de la Ley Núm. 208-1995 (19 LPRA sec. 508(c)).

 Íd.

 19 LPRA sec. 657.

 Íd.

 Íd.; M.R. Garay Aubán, Derecho cambiarlo de Estados Unidos y Puerto Rico, Ponce, Ed. Rev. Der. Pur., 1999, pág. 300.

 L.M. Negrón Portillo, Derecho cambiarlo de Puerto Rico (instrumentos negociables), [s.l.], [ed. del autor], 1995, pág. 114.

 19 LPRA sec. 518(a).

 19 LPRA sec. 518(h).

 31 LPRA sec. 5294.

 Sec. 2-118 de la Ley Núm. 208-1995 (19 LPRA sec. 518); Art. 145 de la Ley Hipotecaria y del Registro de la Propiedad (30 LPRA sec. 2469). Véase, además, Westernbank v. Registradora [II], 172 DPR 71, 90 (2007), opinión de conformidad de la Juez Asociada Señora Rodríguez Rodríguez.

 30 LPRA sec. 2576.

 Westernbank v. Registradora [I], 174 DPR 779, 788 (2008), citando a L.R. Rivera Rivera, Derecho registral inmobiliario puertorriqueño, 2da ed. rev., Río Piedras, Jurídica Editores, 2002, pág. 489.

 Westernbank v. Registradora [II], supra, págs. 89-90.

 Id., pág. 83, citando a M. Osorio, Diccionario de ciencias jurídicas, políticas y sociales, Buenos Aires, Ed. Heliasta, 1992, pág. 1004.

 Sec. 2-113 de la Ley Núm. 208-1995 (19 LPRA sec. 513).

 First Federal Savs. v. Registrador, 113 DPR 857, 861 (1983).

 19 LPRA sec. 604(b)(2).

 Sec. 2-302(2) de la Ley Núm. 208-1995 (19 LPRA sec. 602(a)(2)); B. Santiago Romero, Tratado de instrumentos negociables: Ley Uniforme de Instrumentos Negociables de Puerto Rico y Ley del Código Uniforme de Comercio de los Estados Unidos, 2da ed. rev., Ed. Universitaria, 1981, pág. 168.

 Westernbank v. Registradora [II], supra, pág. 84, citando a Diccionario de Contabilidad y Finanzas, Madrid, Ed. Cultural, 2003, pág. 273.

 Íd.

 Westernbank v. Registradora [I], supra, pág. 785.

 Art. 187 de la Ley Hipotecaria y del Registro de la Propiedad (30 LPRA sec. 2606).

 R & G v. Registradora, 162 DPR 602, 612 (2004); Royal Bank of Canada v. Registrador, 105 DPR 414 (1976); Srio. de Hacienda v. Tribunal Superior, 95 DPR 436, 444 (1967); Arroyo v. Registrador, 86 DPR 362, 374 (1962); Roca v. Banco Territorial y Agrícola, 6 DPR 164, 169 (1904).

 Exposición de Motivos de la Ley Núm. 208-1995, supra.